May it please the court. My name is Eitan Kasteljanich. I'm representing Gary Underhill in this appeal. Underhill is a disabled veteran. He served in the Army as a tank crewman and commander for four years. He worked as a police officer for eight years and he then served in the US Navy for 16 years as a security officer. The VA found him unemployable since February of 2004 due to the combined effects of his service-connected impairments. I'd like to now focus on the biggest errors by the ALJ here. First of all, as part of the VA evaluation process, Mr. Underhill was evaluated by a doctor, Dr. Resvani, who in his report listed significant clinical findings, including a positive straight leg raise test and other things. In the ALJ's decision, you won't find Dr. Resvani mentioned. He doesn't exist. Aren't his conclusions consistent with, and I'll pronounce the names, with the conclusions of Dr., is it Swasey or Swasey? His conclusions are, as I read them, perfectly consistent with those of Dr. Sufis or Sufis, however you pronounce his name. And the ALJ accepted those as accurate. So how are you prejudiced by Dr. Resvani's not being treated expressly? Right, here's the difference I see between those two opinions. Dr. Resvani was evaluating his spine. He was evaluating his back. Dr. Sufis, even in his report, said based on his leg problems, I think he would be limited to light work. But doesn't the ALJ find that his spine and back are severe impairments that at step, I always get the steps wrong, but he does find that. That is that he's consistent with Dr. Resvani's report. The problem is if you, at step two, a severe impairment means it more than minimally affects your activity. So finding it's a severe impairment doesn't tell us how severe, doesn't tell us how, to what extent it affects him. And it doesn't address the fact that Dr. Resvani's findings were very significant. A positive straight leg raise test is a very significant neurological finding. And so those were, you can't, it doesn't seem right. The ALJ can't look at it. It doesn't seem right to me either. I'm trying to figure out where the prejudice was. If in fact the ALJ eventually found that your client had the very impairments that Dr. Resvani described. Well, first of all, Dr. Sufis based his opinion, he didn't examine, he did not examine his back. And so he based his opinion on the other stuff. And then it was a couple months later that Dr. Resvani examined his back. Now it seems a little incongruous for the ALJ to rely on an opinion that was made by someone who didn't examine his back and that it did it before, never looked at the examination, the results from Dr. Resvani's examination. And then once this information was reviewed by the VA, the VA concluded that he was unemployable as a result of that. Right, and that's a separate issue. That is a separate issue. So for an ALJ to not mention, once again, nowhere in the ALJ's decision does he mention any of Dr. Resvani's findings. And the reason that's troubling to me, in the Marsh decision, this court held, I believe correctly, that when a treating physician discusses a person's, discusses clinical findings, an ALJ can't just completely not mention any of them. And then unless if his decision incorporated all of the clinical findings, I think that would be harmless error. But when an ALJ, but if an ALJ doesn't mention any of the clinical findings and doesn't incorporate the effect of those clinical findings, that is harmful error. In this case, the clinical findings we're talking about were not from a examining physician. But I think the same theory would apply when there's very significant clinical findings and the ALJ is silent. That's not analysis. That's nothing. We don't, we can't discuss here how did the ALJ weigh that evidence, because he didn't. There's no evidence that he weighed that evidence at all. There's not one word in his entire decision that mentions any of the findings that mentions Dr. Resvani. It's like he didn't exist. So I think that that's problematic on that issue. I would like, do you have any other questions about Dr. Resvani? Because I would like to turn to the other issue that I think is very important is there were two treating ARNPs, Ms. Bennett and Ms. Tell. Ms. Bennett first treated him still when he was at the, when he was still in the military, and then she went off into private practice and then he ended up going to her again. Ms. Tell was throughout the entire time in the military system. Both of them were asked to complete questionnaires in which they, to describe what they thought his limitations were. Ms. Tell said that he, she thought he would miss one day of work per month, and he was four days of work per month, and that he was limited to less than sedentary work. Okay, well, look at each of them separately, first of all. We'll go back to Ms. Tell. It was less limitation, but it was a limitation to sedentary work. At his age, that limitation is sufficient to require a finding of disability. But the ALJ rejected her opinion. Now, I have to say, the ALJ wasn't completely off on that because he, he pointed to the fact that there weren't a lot of clinical findings supporting Ms. Tell's opinion. There aren't. I couldn't find them. But she was part of a treatment team at the VA, so she had access to all of the VA records. Wasn't there also, on this, I keep mispronouncing it, Dr. Sufis, Sufis, opined that your client could do light work. Right. And the nurse practitioners had a different opinion, I guess. Why wasn't, and the ALJ said, I, I reject their, because it's inconsistent with, with other evidence in the record. Why isn't that a sufficient basis for rejection of the nurse practitioners? Because Dr. Sufis did not, he was a one-time examiner who did not know anything about the back examination that took place after he examined and evaluated. Under the Social Security Act's arcane hierarchies, Ms. Tell and Ms. Bennett were not acceptable medical sources. The ALJ only needed a germane reason to reject them, and inconsistency with the, the, the evidence in the record is generally considered a germane reason. Why, why wouldn't that be the case here? Because Dr. Sufis had not reviewed the evidence that they had. Dr. Sufis made his opinion in 2002. Doesn't that go to the weight rather than whether he's provided a germane reason? Well. His reason, his reason may be wrong, but we don't, we don't review that. We just review to see whether he gave a germane reason. He did not give any opinion on the limitations caused by Underhill's back impairment. None. And so, they did give opinions on how he was limited by the back impairment. Could you, and I don't want to take you off a topic you want to talk about, but I'm interested in hearing your argument about the VA, the treatment of the VA disability finding. Would you, could you direct some time to that? Okay. Well, what's interesting, it kind of circles back because the bigger error there isn't, just because the VA finds somebody unemployable doesn't mean that an ALJ has to adopt that. But he does have to give persuasive reasons for not accepting it. What reasons did this ALJ give? He basically said, it's a different program. They have different rules. Well, of course, it's a different program and they have different rules. That's not a persuasive reason to reject it. Well, the other reason he gave was that the claimant, as I recall it, I'm not looking at it now, but he said it's a different program and many of the items I found that problematic because all of those things were in the medical records, even though they weren't discussed in testimony. But I did view that as a separate reason. It was a separate reason. That was the second reason. You're right. What I point out in my briefs is that the ALJ never asked him any questions about it. I was not Mr. Underneal's attorney at his hearing. Were they in his application for benefits? Pardon me? Did he put those particular issues into his application? Well, in your application, it's more vague. In the disability reports that he filled out, I can't tell you that he did, but I'm recalling that I think he did. I think he mentioned them in his disability reports. But the main thing that you do, he provided them with the VA evaluation, which showed that these were the reason he was found disabled by the VA was based on A, B, C, D, E, F, G. He's, you know, the ALJ was certainly on notice of the fact that those were all contributing impairments that contributed to his inability to work. But the VA, that the ALJ could evaluate them differently. The ALJ, the extent the ALJ looked at these, the multiple items in the VA report, the ALJ was entitled to do that. Isn't that right? That is correct. The ALJ can independently evaluate them, but he didn't give, he didn't really independently evaluate them. In fact, he chose not to. He didn't ask any questions about these impairments. And then after he didn't ask any questions, he said they weren't even severe. He said they didn't even cause a minimal, any minimal effect on him at all. The tinnitus, which was one of the issues identified in the VA report, the ALJ said there was no medical diagnosis and there's some evidence of exaggeration, I thought. With that, the person, the audiologist, the licensed audiologist who did the testing said that the results he was getting were wrong. It was, it was exaggeration. He used the word exaggeration or something. He used a word that wasn't, it wasn't right. And then he instructed him that, he wasn't cooperative, I think is the word he used. Then he instructed him again on how the testing worked. And then all the testing went through normally, went through correctly. And that was the final conclusion. But the ALJ latched on to that one word that said at first he wasn't being cooperative because he didn't, apparently he didn't understand the testing protocol. And the thing about that I'm sorry. I'm sorry. The ALJ also said that there wasn't a medical diagnosis of tinnitus. Is that right? That's right. But as I, as I point out in my supplemental authority, which isn't in effect, doesn't affect this case because it only affects cases filed after May, March 27th of this year, Social Security has acknowledged that licensed audiologists should be allowed to, and in the future will be allowed to, diagnose hearing problems. So what should have happened here is if Didn't that same revision to the rules that's effective in the future say that they're not even going to discuss the VA decisions anymore? Yes. And then it also says that we will be required to discuss things like Dr. Rezvani's evaluation. They will be required to discuss the underlying medical evidence that goes into the VA decision. So if we sent this But then once again, this is not, it's not in effect for this case. None of that is. Yes. I was just going to ask if we, if this case went back to the agency, would those rules be in effect? No, they would not. Because they're only applied to cases filed after a certain date. Filed after. Now, I should make, oh, one other thing here is that what we're looking at is disability prior to March of 2008. He has to prove that or he's not eligible for Title II benefits. And we have opinions from Ms. Tell, from Ms. Bennett and the evidence from Dr. Rezvani that all show that, and the VA decision that shows he's unemployable, that all would support a finding of disability prior to that date. And I would like to reserve some time for a moment. You may do that. Thank you. Good morning, Your Honors. Michael Howard for the Commissioner. Your Honors, I'd like to just jump right in to some of the points raised by the appellant in this case here, starting with the opinion from Dr. Rezvani. And I think that Plaintiff's Supplemental Authority filed very recently in this case really, really actually hit this point in the agency's favor quite strongly. Plaintiff submitted the Marsh case in Supplemental Authority. And the Marsh case was talking about a treating doctor, which Dr. Rezvani was not. He was examining. But we'll set that aside. A doctor who had treatment notes, and the ALJ did not discuss those treatment notes. But what was crucial in the Marsh case was that in those treatment notes, the doctor said, the person is, and I'm paraphrasing, this person is not functional and is disabled by these limitations. So that is a crucial medical opinion. And it was in treatment notes, so the ALJ had to discuss it. What we have in this case, however, is simply clinical findings. So, but, I understand that. But why isn't the ALJ, since the clinical findings go to the claim of disability, why isn't the ALJ required at least to acknowledge them and explain why he doesn't find them, or she doesn't find them, I forget, in this case, persuasive? Well, Your Honor, that's, I might unpack my answer to that question a bit. The doctor is giving opinion about someone's work limitations, and the ALJ has to discuss it. Right. But it doesn't say the doctor doesn't have to discuss mere clinical findings. So Marsh is a worse case for the commissioner. I understand that. But I'm getting back to the facts of this case. You have a physician that makes findings quite relevant to the RFC determination, and they're never discussed. So why is that consistent with the obligations of the ALJ? I would have a few responses, Your Honor. First, maybe the first thing I would address is this idea that plaintiff brought up today, that Dr. Soufis allegedly did not examine Mr. Andreel's back. That is incorrect. There isn't a separate heading in Dr. Soufis' report labeled back, but the doctor... didn't reach the same conclusions as Dr. Razzani. Then shouldn't the ALJ look at the two of those and determine which one he credits? No, Your Honor. The ALJ isn't tasked with crediting specific line-item clinical findings in a doctor's examination report, such as whether the person had a positive straight-leg raised test on one occasion out of a six-year relevant period. It would be going far beyond the case law, like Turner cited in our brief and the Marsh case cited in Supplemental Authority, be going far beyond that and far beyond agency regulations to do what plaintiff is asking, which is to essentially require ALJs to go through the entire record. I didn't ask if they had to do what plaintiff was asking. You agree that the ALJ addresses, does not address Dr. Razzani's findings at all? Yes, Your Honor. So is that, and this is a doctor who examined this person and made some clinical findings that are relevant, I think, to the ultimate determination of RFC. You may not credit them. You may not think that they're, is it okay for the ALJ just not to say anything about them? Yes, Your Honor, it is. These are only clinical findings. The Turner and Marsh cases, among others, are very clear that when the doctor does not give work-related limitations, there isn't a requirement for the ALJ to discuss those statements. So the ALJ isn't required to go through these specific clinical findings and weigh and compare them. Certainly, the ALJ could, but isn't required to in every instance. Go ahead, Judge Graber. I wanted to, before you get too far into your time, ask you about the treatment by the ALJ of the Veterans Administration material. It seemed to me that the ALJ completely misunderstood the system for VA ratings. For example, he makes the statement that there was only 70% compensation, and that's incorrect. As a factual matter, there was 100% compensation, which stems from the weird way that the VA operates that the 70% disability rating equated to 100% So it seems that's one example, but it seems like the ALJ actually didn't even understand how the VA worked. And yes, it's different, but to the extent that he was discounting it because it was different, it seemed like he didn't get it. And the other thing that bothered me about it was that the other reason given was there wasn't a discussion of these other items, yet they were all in the medical records that the ALJ was charged with reviewing. So why are those sufficient grounds for completely discounting the VA's finding of inability to work, that because of his educational level and his disabilities, just the That's what the VA said. And I guess I'm concerned about the sort of lack of coming to grips with that on the part of the ALJ. Sir, your Honor's question raises a number of points, and I'll try to make sure I hit all of them. I don't believe the ALJ misunderstood the VA disability rating system. Certainly, maybe the ALJ should not have discounted it simply because it was a different regulatory scheme. In fact, we've said that. Yes, your Honor. But did the ALJ misunderstand it? No. The initial rating at issue was a 70% disability rating. Scheduled disability. Yes, your Honor. But it was a rating of 70 that, as your Honor pointed out, is paid as 100%. I don't think the ALJ misunderstood that point. And regardless, I would argue that the difference between 70% disabled under the VA scheme and then rated, and then a finding of unemployability with that, is not materially different from 100% disabled and with also a finding of unemployability. But the real issue with the VA finding in this case was the fact that plaintiff did not describe these as limiting him at the hearing. But he wasn't asked about it one way or the other, was he? Your Honor, he was not asked about the VA finding in that context. But what the ALJ's reasoning here is pointing to, I think it was at page 43 of the record, the ALJ asked, why can't you work? And there was some equivocation and the ALJ asked again for clarification, why can't you work? And Mr. Clark said, well, I can hit pain primarily. Primarily. Primarily. And all these other items that are listed in the VA's determination are found somewhere in the medical records, including Dr. Soufis' notes, as I recall. So even though there wasn't testimony specifically about each one, all that information was in front of the ALJ, wasn't it? That is correct, Your Honor. But that information showed that these conditions weren't causing significant limitations. What information showed they weren't causing them? What you're saying is that when the claimant testified, he didn't mention them. What other information showed that these conditions identified by the VA weren't causing limitations? Certainly, Your Honor. For instance, the issue of tinnitus and the audiology reports, there was more than one audiology examination in the record. One of them showed the issue of poor effort, but all of them showed good to excellent speech discrimination and mild hearing loss. I should have limited myself to the non-tinnitus side, because I frankly find the tinnitus thing a sideshow in this one. With respect to the physical limitations, back, hip, et cetera, pain, what part of the record showed that those were not limitations? The first key point of evidence I would point to, Your Honor, would be Dr. Sufis' conclusions, and therefore, I find, you know, I credit him more than them. But he didn't do that. He just said, it's a different rating system, and you're not complaining about that stuff, more or less. Yes, sir. And the first is wrong as a matter of law, and the second one isn't factually true, because the record's full of stuff where he complains about it. Dr. Sufis just doesn't find it. Your Honor, I would disagree with you about the second point. The ALJ's reasoning on that second finding there is persuasive, because the ALJ was discussing other evidence in the record showing that these conditions weren't significantly limiting. That's not what he actually wrote, though. You're reading that into it, but that's not what he said in writing. Yes. Yes, Your Honor. He did not say that at that point in the decision. I'm defending the — And we can only rely on the reasons the agency gave, right, because of genery principles. We have to — the decision lives or dies by what it actually decides and says. That is correct, Your Honor. But I think in this case, when the ALJ is saying he did not raise these as issues that actually limited his ability to work, we have to look at that finding in the context of the whole record and the context of the case. But if you look at the — at what he said about he didn't provide an explanation at the hearing as being an error, is that a harmless error in the context of this case? And if so, why? I'm not certain I follow — So he says his reason for not relying on the VA listing is that he didn't make mention of specific impairments during the hearing, which doesn't seem like it's required or even necessarily relevant since the insured date ends in 2008 and the hearing was sometime thereafter. So that seems to be an error as to why that would go to discounting the VA analysis. However, we do have a doctrine that an error can be harmless. So was — if that's an error, was it a harmless error in the context of this case? I would — while not conceding it was error, Your Honor, I would argue if it was error, it would have been harmless. The ALJ is discussing these other conditions and we look at the medical evidence concerning some of these other conditions that were comprising parts of the VA rating that resulted in building up that rating to 70 or even 100%. And the evidence was showing that these conditions were not significantly limiting him. And to the extent that there were valid conditions, like the hip pain and the back pain, those were accounted for by Dr. Soufis limiting Mr. Underhill to light work. I had one other question that we haven't discussed yet, and that is the issue of whether the ALJ actually considered the use of the older age category because the claimant was just, I think, two — if I recall correctly, two months before his 55th birthday. And the ALJ was certainly made aware of this in the conversation, but I don't see any indication that the ALJ actually considered whether it would be more appropriate to use the older age category, which might have made a difference to the ultimate determination. Your Honor, my — I would argue that the Lockwood case cited in our brief answers this question directly. And in Lockwood, the court held that it was enough for the ALJ to simply cite the individual's date of birth and then the controlling regulation on the issue, which I believe was — But in Lockwood, wasn't there also a vocational expert called so that there was some basis for looking at more than a mechanical application of the age categories? There was, Your Honor, but — And there wasn't in this case. That is — that is very much — I would submit dicta in the Lockwood case. When we just read the — And did the V.E. address the age issue? Is that in the opinion? Your Honor, in this case, there was not a V.E. There wasn't one. That was my point exactly, that in Lockwood, there was. In Lockwood, did the V.E. address the age issue? I'm not recalling how specific the facts of Lockwood touched on this issue, Your Honor. Well, the difference, I guess, is that a vocational expert talks about the whole What jobs can this person perform? And the whole point of this issue of age is whether it's going to be a mechanical application of the grids, which is what happened here, versus an individualized conversation about the person. And so just the fact that that was done in Lockwood shows that there was that individualized conversation about the person, whether or not they spoke about specifically. And I guess I'm concerned that we don't have anything similar here that demonstrates that kind of either a conscious decision not to do that and an explanation of why, or that kind of individualized consideration. No, Your Honor. The Lockwood case agreed with the agency's interpretation of this regulation, which essentially did not require the L.J. to give a specific explanation of the poor lining. But required consideration. The L.J. can consider an issue without explicitly discussing it in the decision, and that is what Lockwood recognizes. So we should just assume that in every case, then, that it's considered, whether it's ever mentioned or there's any discussion of it? Your Honor, there's no requirement in the controlling regulation or in Lockwood, which is controlling precedent, of course, that the L.J. There was no discussion of it, if I remember calling it right. There were just the panel inferred it from other elements. But there was no express discussion of it. There was a citation, though. That is exactly right, Your Honor. There's a citation to the date of birth. There was a citation. I think you argue that plaintiff's lawyer, in fact, raised this issue specifically. Date last insured was just a couple of months before his 55th birthday. So it was expressly raised to the consideration of the L.J. I believe it was raised at the L.J. hearing, Your Honor. I guess. I think it was about four months away. I guess the question that I have is, is there a difference? And it seems to me you're arguing there is not a difference between raising an issue by a party and the A.L.J. actually considering that issue and, meaning, processing the information and making a determination one way or the other. And clearly, as I said at the outset, this was raised. But I guess what I'm having difficulty seeing is whether there's even an inferential possibility in the actual decision that this was considered. Your Honor, I would rest my answer on just simply a reading of Lockwood that the key shows is the key holding of Lockwood, we would argue. The next sentence. Where in this decision before us does it show that this was considered? In the decision, where does it show? Just as in the Lockwood case, Your Honor, I would argue that it is by citing the individual's date of birth and then the controlling regulation on the borderline age situation. Nothing further would be required. The language of Lockwood saying, continuing on from the holding and then saying, finally, we are satisfied that the A.L.J. did not, you know, and then it continues talking about the vocational expert. So this language, finally, this is something that is assuring us. It comes after the court's holding. And if we look at footnote four of the Lockwood case as well, the court is saying, here, by contrast, the government argues and we agree that under the plain language of citing the regulation, the A.L.J. needed to show only that she considered whether to use the older age category. Isn't that paragraph, and we're reading the same language, subject to a slightly different interpretation, which is, one, you satisfy the requirement simply by mentioning the age and citing the reg, but the court has to be also satisfied that it wasn't applied mechanically. And in that case, the court was because it heard the testimony of a vocational expert and nonetheless reached the decision. So it's not the citation issue that troubles me here. It's the mechanical application of it. If I may answer that, Your Honor, I do see that I'm going a little bit over time. But that would the Lockwood case made the key point of agreeing with the plain reading of the regulation controlling this issue that the government was defending. The regulation on this issue does not require the A.L.J. to call a vocational expert on this issue. I think maybe later, in later paragraphs of the regulation, it might talk about medical vocational protocols. And those are separate. I'm just saying that the court seemed to have two points. One is you've met your surface requirements by citing the age and the reg. And now we worry about whether or not you've mechanically applied it. And the answer is, we're sure you didn't because you heard testimony about it. And here, it's that mechanical application part that I'm the record doesn't help me on. Certainly, Your Honor. Again, my reading of Lockwood would disagree with that. Thank you, counsel. We took you over your time. But we appreciate your responding to our questions. Mr. Yannich, you have some rebuttal time. I want to start by saying one way to avoid the Lockwood issue is to accept Dr. Rizvani's really uncontradicted clinical findings that were not discussed. Because his clinical findings, such as Underhill was walking with a right-sided limp, positive straight leg raising, pain radiating to the right leg. He had pain, weakness, fatigue, incoordination, and lack of endurance affecting range of motion of the lumbar spine. All of those findings, none of which were mentioned by the ALJ, contradict the ALJ's finding that he could do light work. They contradict the ALJ's finding that he could be on his feet for six hours in an eight-hour day. If he couldn't be on his feet for six hours in an eight-hour day, he's limited to sedentary work. If he's limited to sedentary work under the medical vocational rules, he's disabled. So that's why Dr. Rizvani's opinion is so important here. And the reason it's important, why the ALJ has to mention, has to discuss clinical findings like that, if Dr. Rizvani's clinical findings were consistent with the ALJ's residual functional capacity assessment, the ALJ, I think, you know, it would be a harmless error for him not to mention it because his RFC already accounts for all of those findings. But here, the RFC obviously does not account for those findings. And that's why it's so important for him to discuss it and to explain his reasoning. But it isn't there. He didn't do it. With regard to your, Judge Ikuda, your question about the VA, would that error be harmful if we assume that that was not an accept, that was an error in failing to, in rejecting the VA opinion because of him failing to testify about all of those different impairments? It would be a harmful error because what we have, would have then is there were only two reasons stated. That reason would be no good. The other reason was there are different programs with different rules. Well, that's not, that doesn't tell us anything either, which meant he would have stated no valid reason for rejecting the VA's persuasive opinion. He had to give a persuasive reason. He gave no reason at all, no valid reason, no persuasive reason. So then if you accept the VA's finding of unemployability since 2004, February 2004, sounds like he would have been limited to sedentary work prior to 2008. So that's why it is harmful error. It affects the outcome of the case. And I think that's everything. Oh, there's one other thing. As far as the ALJ not mentioning the, in his analysis, not really understanding, your comment about him not, seems like he didn't really understand some of the elements of the VA ratings. The ALJ in his decision found one report where it says, well, look, now he's listed as 100% since 2010. The ALJ didn't seem to realize that the unemployability dated back to February 2004. So that was one additional element of confusion, I think, for the ALJ. Thank you, counsel. The case just argued is submitted. We appreciate the helpful arguments from both of you. And we are adjourned for this morning's session.
judges: Graber, Ikuta, Hurwitz